Our next case is Franco v. Chobani. Okay, Mr. French, whenever you're ready. Good morning, Your Honor, and may it please the Court. Yates French on behalf of plaintiffs. This case turns on the distinction between agency non-binding announcement of enforcement discretion as opposed to an agency interpretation of its own regulation. Specifically, it turns on whether or not the former is sufficient to preempt state law claims. You know, Judge Tharp said that it is hard to imagine that the FDA simultaneously intended to allow, number one, the manufacturers to omit allulose from the total sugars declaration, and two, consumers to sue under state law based on that omission. I'm wondering if you would tell us why he was wrong in that respect. This is such a great question, and I'm glad you're asking it. I think you're specifically referring to footnote 38 of Judge Tharp's opinion. And he's asking a very common sense question. Wouldn't it be silly for the FDA to say you can do this and still allow consumers to sue for that exact claim? I agree with it. I don't necessarily think he got it wrong. I think what he did was he misconstrued our claim. And this goes to the very important distinction between the legal and regulatory structure for back panel nutrition fact panel declarations. That's the little square box on the back of labels that we all see when we turn it over, which our case has nothing to do with, as opposed to the entirely different regulatory structure for front panel nutrient content claims. Specifically, in this case, a zero sugar nutrient content claim, which, you know... Help me there. So just to clarify, as you go on, is it your position that Chobani must declare the grams of allulose on the total sugars portion of the nutrition panel in order to avoid consumer deception? Or is your claim limited to the use of a label like zero sugar? Okay. So I'd like to break that question into two components and begin with the first one, which is Chobani required to include allulose in the calculations of its total sugar for its back panel NFP declarations? And the answer is no, it's not required. In fact, I think the FDA, in the allulose guidance, has made it kind of expressly optional. And what I'd like to refer you to specifically is page 8 of the 2020 allulose guidance, where the FDA says, quote, we intend to exercise enforcement discretion if allulose is not included in the amount of total sugars declared on the label. But more importantly, I think what your claim was asking is whether or not the plaintiffs are suing Chobani for failure or lack of failure for anything that they put in the NFP back panel declaration. The answer to that question, Your Honor, is an unequivocal no. Our claims do not touch that. What we are suing for, well, what we're suing for is deceptive front label zero sugar claims. For purposes of your deception claim, could Chobani keep the nutrition panel as is, but use some language other than zero sugar to alert consumers to the difference between allulose and traditional sugars? Absolutely, Your Honor. They could put any number of things on the front panel. They could say Chobani yogurt sweetened with allulose. Right? But that's not what they said. In giant letters, I mean, literally on the front of the label, the words zero sugar are bigger than the word yogurt. Right? They're claiming that this is zero sugar. Now, our consumer fraud claims are relatively simple. They just allege that's false. In order to survive preemption, though, we do have to look at would the FDA have allowed this front label nutrient content claim zero sugar? Should we ask them? In cases like this in the past, what we've done in similar courts of the other Supreme Court does it. Should we ask the FDA to file an amicus brief? It might not be subject to our deference, but it would be subject to Skidmore deference as to what they think is allulose sugar. Here's why I don't think we need to, Your Honor, which I understand is a bit of an evasive claim or an evasive answer. Let me answer your question first. Should we ask them? I think the answer to that is it's unnecessary. And let me tell you why. In other contemporaneous briefing filed after the issuance of the allulose guidance, the FDA has clearly said that for purposes of the definition of total sugars, it still considers allulose to be a sugar. It said that in briefing filed before a different federal district court in the Bonnemousse litigation. If you're so confident in the position, wouldn't they say it again? The issue that occurs here is if we just talk about chemical composition, the such-as language is totally irrelevant. The such-as language, when the FDA defines trans fat, when they define polysaturated fat, when they define dietary fiber, etc., etc., and they use chemical definitions, they don't give us such-as examples. And in the 2020 guidance, which you referred to, they clearly distinguish allulose from all of the other sugars that are listed in the such-as parenthetical in the definition of total sugars. And they say allulose is not like these. It doesn't have the same calorie content. It doesn't have the same tooth decay issue. It's not digested in the same way. It's not like these other sugars. I agree. The allulose guidance identifies different physiological impacts between allulose and, for example, fructose. But not, for example, all of them. All of the sugars listed in the such-as clause. Every single one of them. Fructose, glucose, whatever else is listed. All of them. It identifies some differences. However, I think it's meaningful that in the allulose guidance, where they identify these differences, they never announce that they're going to interpret allulose not to be a sugar. They took a measured step. They could have changed the rule. Obviously, they had the ability to and are capable of announcing a new interpretation. They didn't. All they did was announce conditional enforcement discretion that they wouldn't even necessarily do unless the manufacturers elected to exclude allulose from the back panel declaration. And they limited that enforcement discretion to back panel declarations. That's the issue that Judge Rovner raised and Judge Tharp mentioned, which is to say the FDA is not going to enforce, but the FDA is going to leave it up to private plaintiffs in the various states to enforce something that the FDA is not going to enforce. I think the best response to that is that the FDA has continued to enforce the regulations and has treated allulose as a sugar with this exact product. And this goes to the changes that Chobani has made on its label since commencement of this litigation. So, let me make sure I get the exact citations to the regulations correct. The regulation that governs front panel nutrient content claims, 21 CFR 10160, C1, Romanets 1 and 2. Now, Romanet 1 says in order to make this front label zero sugar nutrient content claim, there must be no more than half a gram of sugar per serving. Romanet 2 says no matter how much of any ingredient that is a sugar or that is commonly understood to be a sugar, if you're going to make this front label zero sugar nutrient content claim, you have to identify it as a sugar. You have to put an asterisk next to it and then say on the back label, this contains a negligible amount of sugar. When we commenced our lawsuit, Chobani was in violation of both elements of that regulation. Since then, they've amended their back panel label to add the asterisk that identifies allulose as a sugar. I'm not sure what difference that makes to this case, though, because I think that the argument is that allulose is not a total sugar and it doesn't make any difference whether it's on the front label or on the nutrient panel. The reason it matters, Your Honor, is why they added it. The reason they added it is because the FDA told them they had to. This was correspondence we cited in our reply brief. During Chobani's TMP process, they provided the label that did not show how much allulose was in the product. But it did identify that allulose was in the product. And what did the FDA tell them? The FDA said, hey, allulose is a sugar. In the email that we excerpt and put in our reply brief, you can read it for yourself, they identify that specific regulation. Romanet 2, it says, this is a sugar. You have to add an asterisk to it. So when you're saying, wouldn't it be silly to say that the FDA is continuing to enforce its nutrient content claim regulations for allulose, I would say we have evidence that that's exactly what they're doing. I do want to answer any follow-up questions you have, but I would also like to reserve the remainder of my time for rebuttal. Okay, go ahead. Mr. Tumelo. Good morning, Your Honors. Drew Tumelo for Chobani. Congress delegated to FDA the authority to determine what counts as a sugar for labeling purposes, how scientific developments affect regulatory classifications, and how to prevent consumer confusion while maintaining nutritional accuracy. So when FDA determines that allulose should be excluded from total sugars declaration because it does not metabolize like traditional sugars, that is an exercise in delegated expertise, and it is entitled to deference under Auer or Skidmore. And that is especially true where, as here, the guidance was subject to notice and comment, published globally to industry, applied on a prospective basis. A contrary rule would mean that Chobani could be invited by its regulator to invest in research, development, bring new products to market, only to be sued in 50 states for misleading consumers for doing what the FDA said it could do. That is not the law. The decision also... Oh, hello, hello. It's Judge Rovner.  At bottom, is it your position that when the FDA said in the allulose guidance, we will not enforce the sugar disclosure regulation as to allulose, what it really was saying was we will not require, as a regulatory matter, that allulose be disclosed as a sugar? Doesn't your position as to preemption turn on the latter understanding of what the allulose guidance said? Yes, Your Honor. I think if I'm tracking, our position is that the allulose guidance interprets the total sugars regulation and says that allulose need not be included in that declaration because it is not like a traditional sugar. And therefore, since Chobani can do that, it can also permissibly and is authorized to make a zero sugar claim on the front of the pack. The nutrient content claim regulation specifically says if you have a zero in total sugars, as defined... If you have a zero sugars as defined in the total sugars declaration, which they say we can make, then you can say zero sugar on the front. And that's precisely what we did. And the appellants raised the argument, well, the FDA and the TMP said you should put an asterisk on there. And I would just say that glosses over sort of a fundamental concession. There's no reason to be talking about asterisks and whatnot if you're not already in and making an authorized nutrient content claim. When I look at the allulose guidance, I see the agency saying we've been asked to exempt allulose from the regulation regarding total sugars. There is reason to believe allulose is different from traditional sugars. And so we will not enforce the regulations as to allulose while we entertain the possibility of future rulemaking. Why should we treat this as the agency's authoritative interpretation of the nutrition panel regulation as to allulose, given the verbiage that signals this is no more than a tentative rationale for an interim decision as to enforcement pending further review? Because, Your Honor, it is. It does reflect the agency's authoritative view on the regulations. Now, I would grant you it is in an informal document. But that is precisely what an agency is allowed to do. It is allowed to interpret its regulations informally. Interpretive rules don't need to go through notice and comment. They don't need to have the force or effect of law. And here the FDA went the extra mile to go through notice and comment. Yeah, but then where does the 2016 final rule figure into our analysis? I mean, is it your position that the allulose guidance overruled the 2016 rule? No, not at all. The rule itself, the operative language we're discussing, didn't change in the 2016 rule. What the allulose guidance says is that there are new sugars due to advances of food technology that we need to evaluate. And the FDA's guidance says, therefore, we must consider. We must consider how information about sugars like allulose should be captured on the label. Our current thinking is consistent with helping consumers make healthy dietary choices. We should consider not only chemical structure, but also other evidence, which it then went on to consider. We're not here because the government, you know, the FDA kind of messed up. And I thought that Judge Kirsch's question was very helpful. Do you think that it would be helpful for us to get an amicus brief from the FDA? Your Honors, we would absolutely welcome that. We have every belief that this is the FDA's interpretation of this rule. In the TMP process, we submitted our prominent zero sugar labels. We've had multiple discussions with the agency about this product before bringing it to market. And we would not object at all to inviting the FDA to express its views here. I mean, at least if we did that here, at least, I think, at least, the FDA would be entitled to skid more deference. We'd have to consider at least for its persuasive authority, right, their view on... Agreed. It might not reach the level of our deference, okay? Do you agree with that? Look, I don't think it's necessary for us to fight over which process it goes in, our or skid more. It's certainly skid more. Our itself did involve an amicus brief, so we could make arguments about that. But certainly, it would be helpful to the court for its persuasive effect. The other point I just, I really want to come back to is the deception piece, because I do not think that what they have articulated is a plausible theory of deception. They are accepting and not challenging zero, that on page 28 of their opening brief, they make clear that consumers are not deceived by the zero sugars on the back and they wouldn't sue. And they've reiterated that position to your honors this morning. And again, by operation of the nutrient content claim reg, once you have a zero on that total sugar back panel declaration, you can make a zero sugar claim. And the deception falls apart because the nutrient content claims themselves are specifically there to help consumers make better dietary choices. So if FDA has said that a zero sugar claim in these circumstances would provide consumers with more accurate information about the physiological impact of the foods they eat, how can there be a plausible claim of deception? So I think on that alternative ground, that is also a basis to affirm the district court's decision. Can we properly reach your alternative argument as to consumer deception at the pleading stage of the case? I mean, our decision in Bell makes clear that whether labeling is deceptive requires a fact-intensive assessment based on a developed record. We don't have a developed record like that here, do we? You have significantly more than in Bell. And Bell doesn't say that the consumer deception issues can never be decided on a 12b6. It notes that most often the case, it's a factual question and that it's better resolved later in the case. But what you had in Bell was just a bunch of people's intuitions about what the label meant. And the judge, the district court, thought that 100% Parmesan grated cheese sort of meant something and that it was sort of obvious. But here what I would say is you have two very important things that were not present in that case. One, the theory pleaded in the complaint of why consumers are deceived. The plaintiff here alleges that consumers care about sugar because they care about calories and blood sugar. And so if that is what is pleaded as what consumers care about, the zero sugar claim here cannot be deceptive because there is no impact on calories or blood sugar. And second, you also have the FDA's view in the guidance that including allulose in sugars would provide inaccurate information to consumers about calories, blood sugar, in the case of diabetics, and tooth decay. So you have two fundamental different allegations and regulatory guidance before you here at the 12B6 stage than the district court had in Bell. So in Bell, we understand in those cases where the judge is just saying, well, what are my ordinary, you know, what are my sort of horseback opinions and intuitions about what the label means? No, that's no good. But here when they have pleaded the rationale for why they're deceptive and that fundamentally contradicts the reality, then I think you can determine that this is not – they pleaded themselves out of court. They pleaded that, you know, they were looking for a zero sugar product because they didn't want calories, they didn't want weight gain, you know, they didn't want the blood sugar rise, right? And that's – but that's what they got. They weren't – they were not deceived. So those, I think, would be a basis for just – for harmonizing with Bell. Thank you, Your Honor. So with that, are there other questions we'll submit? Okay. Thank you, Mr. Tomello. Mr. French, rebuttal. Next time you're welcome to use the table, by the way. I looked over there. I thought you had disappeared on us. This is my first time arguing in this court, Your Honor. I am happy just that I didn't fall down. Well, it's nice to have you here. May it please the court. I want to start by addressing the court's discussion of a potential amicus brief. Certainly, I have no objection to it, but let me make two points. First, before we determine that that's necessary, I truly do urge the panel to go back and read what the FDA has already briefed in the Bonnymouse litigation. They've already answered this exact question. They said in the allulose guidance – and this is a brief that postdated that – we determined allulose is still within the definitive total sugar. All we were saying is that we weren't going to enforce that for certain back-label declarations. Mr. French, I have – what you're asking us to do, though, seems to me to be a difficult proposition. In other words, what you're asking is for us to defer to the FDA in a brief that it filed in the district court in separate litigation, which to me would just make much more sense to ask the FDA to file – maybe they'll file the exact same brief and it'll take them a week. I don't know, but it just doesn't seem to – I guess what I'm saying is why not – if your position is defer to the FDA's brief in other litigation in a district court, why not just ask them to submit a brief here and then we'll know? I certainly don't disagree strongly enough to argue the point with Your Honor. I would say what I'm really asking the court to defer to is 30 years of regulatory history where the FDA has continuously said allulose is a sugar, sugars are defined chemically. I think that's what the allulose guidance itself says. Yeah, I get it. I mean, it's a federalism argument, right? I mean, that's what it is. It's not just a federalism argument, Your Honor. My biggest contention with the district court's ruling, I think he just misread the allulose guidance. Look, if this panel reads the allulose guidance and concludes that that guidance is announcing the FDA's interpretation of the definition – Yeah, maybe it's not unambiguous is what you're saying, right? The allulose guidance from 2020 maybe is not unambiguous as to what you're saying. Go ahead. No, no, no. Go ahead. Look, I think the allulose guidance means what it says. They're saying we're announcing enforcement discretion. I mean, if allulose wasn't a sugar, where's the discretion? Well, that's your federalism argument, I think. We're not going to force it, but the states can do whatever they want. Well, my claims are for consumer fraud, right? State law claims, though. Yes, Your Honor. But remember, that has a safe harbor exception. If the FDA had one way or another said, Shabani, you're allowed to make this front label nutrient content claim, I wouldn't be bringing my claims. There's also an underlying issue here of implied preemption, which hasn't been briefed yet. We don't have anything on implied preemption of that. If the case was remanded, I think that would certainly be a question for the district court down the road. It's not in front of us now, right? I agree with that as well, Your Honor. Sorry. If there is a request for amicus briefing, it should inquire not just to Shabani's compliance with 10160 Romanet 1, but also... We wouldn't ask them that. That's for us to decide. All right. But keep in mind, one possible... The reason I would like an amicus brief is I'd like to know whether the Alulos guidance, was that merely a preview of a potential rationale for future rulemaking as to Alulos, as opposed to the sort of authoritative position statement that the Bondemos Court construed it to be, you see. I think that's an issue. Yeah. Go ahead. I'm sorry. I think that's a reasonable question. With my remaining 40 seconds, I do just want to respond briefly to their argument in the alternative, lack of deception. So keep in mind, the standard can be met two ways, by alleging deception or by alleging literal falsity. We've done both. But how can you not say we've sufficiently pled literal falsity when the front of their label says zero sugar and the back of their label says, well, actually, Alulos has some small amount of sugar. So I think we have alleged both literal falsity. I also think that there's sufficient grounds to find that we properly allege deception under Bell. In addition, I mean, the regulatory docket, which we've asked the court to take judicial notice of in our reply brief, it's replete with letters from consumers saying, we have no idea what the heck Alulos is. So I think that's also fair grounds to find deception. And with that, I rest your honor. Okay. Thank you, Mr. French. Thank you to both counsel. The case will be taken under advisement.